IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN JOSEPH WOJCIECHOWSKI, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL,[1] | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | NO. 18-3843 |

**MEMORANDUM OPINION**

**LINDA K. CARACAPPA**
**UNITED STATES CHIEF MAGISTRATE JUDGE**

      Plaintiff Stephen Joseph Wojciechowski brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Act. In accordance with 28 U.S.C. §636(c), Fed. R. Civ. P. 72, and Local Rule 72.1, consent to the exercise of jurisdiction by a Magistrate Judge has been established.

      Presently before this court are plaintiff's request for review, the Commissioner's response, and plaintiff's reply. The Commissioner moved to stay the litigation pending the outcome of two cases presently before the Third Circuit Court of Appeals. For the reasons set forth below, we find that the Commissioner's Motion for Stay be DENIED and that plaintiff's request for review be GRANTED. Plaintiff's case is remanded to a different, constitutionally appointed ALJ. Since the ALJ's decision was a nullity based on Lucia, we do not address the merits of petitioner's additional claims because a new ALJ must conduct a de novo review on

---

[1] Andrew Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

remand.

I.      FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a fifty-seven-year old male born on July 17, 1962. (Tr. 28). Plaintiff has least a high school education and past relevant work as a laborer and facilities maintenance. (Tr. 28, 146-151).

On February 12, 2015, plaintiff filed an application for DIB. (Tr. 102-103). Plaintiff's alleged disability onset date was June 14, 2013. (Tr. 128). Plaintiff's application for DIB was denied at the state level on February 14, 2014. (Tr. 12). Plaintiff's application for SSI was denied at the state level on April 8, 2015. (Tr. 50-55). Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").

On March 23, 2017, ALJ Stephen Bosch held a hearing. (Tr. 25-49). The ALJ issued an opinion on August 24, 2017, finding plaintiff not disabled under the Act from October 31, 2007 through the date of the ALJ's decision. (Tr. 9-24). Plaintiff filed a request for review and on July 11, 2018 the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Plaintiff appealed that decision to this court.

On September 10, 2018, plaintiff initiated the present action. Plaintiff argues that substantial evidence does not support the ALJ's decision and, for the first time, plaintiff contends the presiding ALJ was improperly appointed and therefore lacked legal authority to decide plaintiff's case. Pl. Br. at 13-16. (citing Lucia v. S.E.C., 138 S.Ct. 2044, 2055 (2018) (holding that ALJs employed by the Securities and Exchange Commission ("SEC") were inferior officers subject to the Appointments Clause of the United State Constitution and that a party who makes

a timely challenge to the constitutional validity of the appointment of the officer who adjudicates his or her case is entitled to relief). Plaintiff concedes that he failed to present this Appointments Clause claim before the ALJ and the Appeals Council. Id. at 14. The Commissioner responds that plaintiff's Appointments Clause claim should be dismissed because it was not timely raised by plaintiff during the Administrative Process. Def. Resp. at 15-24.

Since plaintiff initiated the present action, district court judges in this district have remanded identical Appointments Clause claims, while other district court judges in this district have declined to remand. Appointments Clause claims have also been raised in other districts. The Middle District of Pennsylvania issued two decisions on March 4, 2019, finding that the plaintiffs had not waived their Appointment Clause claims by failing to raise the claim during the administrative process. See Bizarre v. Berryhill, 364 F. Supp. 3d 418 (M.D. Pa. 2019); Cirko v. Berryhill, No. 1:17-CV-680, 2019 WL 1014195 (M.D. Pa. Mar. 4, 2019). On April 5, 2019, the Commissioner appealed the Middle District decisions in Bizarre and Cirko to the Third Circuit Court of Appeals. On June 21, 2019, the Commissioner moved to stay all further proceedings in this case pending the Third Circuit's ruling.

For the reasons discussed below, we find that the ALJ was not appointed in accordance with constitutional requirements and petitioner was not required to preserve his Lucia objection at the initial administrative level of review. Additionally, it would have been futile for petitioner to raise his Appointments Clause objection before the ALJ. We also find that the Commissioner's motion for a stay is denied.

II. STAY AND ABEYANCE

As a threshold matter, this court must resolve the Commissioner's motion to stay before proceeding. Plaintiff argues that he would be harmed if a stay were granted because the

stay would be indefinite and at a minimum add years to his case. See Pl. Resp. to Motion to Stay, Doc. 14. The Commissioner argues that a stay is appropriate because the very same Appointments Clause claim is currently pending before the Third Circuit Court of Appeals, consequently granting a stay in this matter will promote judicial efficiency and consistency. Def. Motion to Stay, Doc. 21, at 2. The Commissioner also contends that this court cannot avoid plaintiff's Appointment Clause claim, even if this court were to remand on other grounds, because the resolution of the Appointment Clause claim will dictate whether plaintiff's case will be heard before the same ALJ or need to be heard before a different ALJ. Id. at 2-3. For the following reasons we find that the Commissioner's Motion for Stay is denied.

The district court's power to stay a proceeding "is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." U.S. v. Breyer, 41 F.3d 884, 893 (3d Cir.1994) (citing Gold v. Johns–Manville Sales Corp., 723 F.2d 1068, 1077 (3d Cir.1983)). This power to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 737–38 (3d Cir. 1983) (quoting Landis v. North American Co., 299 U.S. 248, 254–55 (1936)).

The legal principles that guide this court have been distilled into four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987). Thus, under the district court's power to stay a proceeding, the court must weigh the competing interests of the parties. The party seeking the stay must demonstrate "a clear case of hardship or inequity, if there is even

a fair possibility that the stay would work damage on another party." Gold, 723 F.2d at 1075–76.

In the present case, plaintiff has demonstrated a clear case of hardship. Not only is plaintiff undeniably ill, but plaintiff has also faced significant wait times for a final decision regarding benefits, which he is potentially entitled to. Before even proceeding to this court, plaintiff waited a significant amount of time for his appeal to be heard before an ALJ, and if plaintiff's case is remanded, plaintiff will again face significant wait time until his case is reheard by a properly appointed ALJ. Plaintiff also faced additional wait time before this court. Thus, to make plaintiff wait again, when the Third Circuit may not render a final decision for several months if not more, presents a clear case of hardship. On the other hand, the Commissioner will not face a significant hardship if this case moves forward because the Commissioner has already submitted the required briefing in this matter. We believe, the resources the Commissioner will be required to expend in order to litigate this case on remand are minimal and do not constitute a hardship.

The interests of judicial economy are also not furthered sufficiently to outweigh plaintiff's hardship. The Supreme Court has recognized that "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Stokes v. RealPage, Inc., CV 15-1520, 2016 WL 9711699, at *1 n.1 (E.D. Pa. Jan. 25, 2016) (citing Am. Life Ins. Co. v. Stewart, 300 U.S. 203, 215 (1937)). However, "[o]nly in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Landis v. N. Am. Co., 299 U.S. 248, 255 (1936). Here, although plaintiffs are already facing inconsistent results among judges, two factors weight strongly against a stay.

First, the strong merits of plaintiff's claim, which are discussed in the following section. Second, the hardship plaintiff will face if a stay is granted and plaintiff is forced to continue waiting for the final disposition of his claim. In this court's opinion, the present case is not the "rare circumstance" when a plaintiff should be required to stand aside, especially given the fact that the Commissioner concedes that the ALJ who heard plaintiff's appeal was improperly appointed.

In weighing the competing interests of plaintiff and the Commissioner, the court finds that plaintiff will suffer substantial hardship if this action is stayed and the Commissioner will not likely suffer any significant hardship or inequity if the matter proceeds. Accordingly, the court finds the most fair and efficient way to continue this matter is to deny the Commissioner's Motion for a Stay, and order remand.

III.  DISCUSSION

Plaintiff argues that the ALJ was an inferior officer who was not constitutionally appointed and therefore the ALJ's decision is invalid. Pl. Br. at 13-16.

    A. <u>Lucia and the Social Security Administration ALJs</u>

In <u>Lucia</u>, the Supreme Court considered whether the Securities Exchange Commission's ("SEC") administrative law judges ("ALJ") were inferior officers who needed to be appointed pursuant to the requirements of the Appointments Clause.

In <u>Lucia</u>, the SEC had brought an administrative action against Lucia, alleging violations of securities law. <u>Id.</u> at 2049-50. Following a hearing, an SEC ALJ imposed sanctions, finding plaintiff violated certain securities laws. <u>Id.</u> On appeal, the plaintiff argued that the ALJ's appointment by SEC staff members violated the Appointments Clause, thus the ALJ lacked constitutional authority to adjudicate the administrative proceeding. <u>Id.</u> at 2050, <u>see</u>

6

also U.S. Const., art. II, § 2, cl. 2 (inferior officers must be appointed by "the President," "Courts of Law," or "Heads of Departments.")

The SEC and the United States Court of Appeals for the D.C. Circuit rejected the plaintiff's argument, finding the ALJs were "mere employees" and not inferior officers. Id. On June 21, 2018, the Supreme Court reversed, holding that the SEC ALJ's were inferior officers subject to the requirements of the Appointments Clause.[2] Id. at 2055. The Court held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief. Id. (quoting Ryder v. United States, 515 U.S. 177, 182-183, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)). The Court found petitioner had made a timely challenge contesting "the validity of [the ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." Id. The Court held the plaintiff was entitled to a new hearing before a "properly appointed official." Id. While the Court found petitioner had timely raised an Appointments Clause challenge, the Court did not define what constitutes a "timely challenge."

Lucia involved the SEC ALJs', however, it had effect on ALJs in other agencies, including the Social Security Administration ("SSA"). Following Lucia, the President signed an executive order that amended the process of future ALJ appointments. Exec. Order No. 13,843, 83 Fed. Reg. 32755 (July 10, 2018). On July 16, 2018, the Acting Commissioner of the SSA ratified the appointments of the SSA ALJs and approved their appointments. Soc. Sec. Admin., EM-18003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process-Update (effective date 08/06/2018).

---

2 The Court found the SEC ALJs were inferior officers because they (1) "take testimony," (2) "hold a continuing office established by law," (3) "conduct trials," (4) "rule on the admissibility of evidence," and (5) "have the power to enforce compliance with discovery orders." Lucia, 138 S. Ct. at 2053 (applying Freytag v. Comm'r, 501 U.S. 868, 881-82 (1991)).

7

In the instant matter, the Commissioner does not dispute that the SSA ALJs were not constitutionally appointed. Def. Resp. at 16 n. 8 ("For the purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers.") However, the Commissioner argues that plaintiff forfeited his Appointments Clause claim by failing to raise it before the Social Security Administration. Def. Resp. at 15-24.

The issue before us is whether petitioner's claim is timely or has been forfeited for failure to raise during the administrative process.

B. <u>Timeliness of Appointment Clause Challenge</u>

Following the Supreme Court decision in <u>Lucia</u>, a majority of the federal courts in other districts, applying the case in the SSA context, have held that for an Appointments Clause challenge to be timely it had to be raised during the administrative proceedings, otherwise the plaintiff forfeited the claim. More recently, the Honorable Mark A. Kearney, the Honorable Richard A. Lloret, and the Honorable Timothy R. Rice of this district, the Honorable Christopher C. Conner, Chief Judge of the United States District Court for the Middle District of Pennsylvania, and the Honorable Robert T. Numbers, United States Magistrate Judge for the United States District Court for the Eastern District of North Carolina reviewed the issue of whether, in the SSA context, an Appointments Clause challenge must be raised in the administrative proceeding to be considered "timely" and have ruled that there is no requirement that the challenge be brought in the administrative proceeding. We are persuaded by their analysis and agree with their reasoning, as summarized below.

The Court in <u>Lucia</u> found that a plaintiff who "timely" challenges an ALJ appointment is entitled to relief. 138 S. Ct. at 2055 (<u>quoting</u> <u>Ryder</u>, 515 U.S. at 182-183)(granting relief to a plaintiff who raised an Appointments Clause challenge before the Coast

Guard Court of Military Review on direct review, finding "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question…") While the Supreme Court in Lucia and Ryder found the challenges were timely, the Court did not define when a challenge would be untimely. The Court also did not create a bright line rule that only challenges brought during the administrative proceeding will be considered timely.

In Lucia, the plaintiff failed to raise his Appointments Clause challenge before the ALJ, instead bringing the claim before the Appeals Council for the first time. Id. at 2050. The Supreme Court found Lucia's claim was timely, having been raised before the Appeals Council. Id. In the instant matter, plaintiff raised the Appointments Clause challenge for the first time in his brief to this court, failing to present the claim to the administrative agency.

Initially, we note that the Supreme Court has declined to require issue exhaustion at the Appeal Council level. See Sims v. Apfel, 530 U.S. 103, 112, 120 S. Ct. 2080, 147 L.Ed.2d 80 (2000). In Sims, the Court ruled that "a judicially created issue-exhaustion requirement is inappropriate" and claimants "who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." Id. Thus, the Court in Sims settled the issue of whether a claim had to be raised before the Appeals Council to accomplish exhaustion, holding that it does not. In coming to that decision, the Court explained neither statute nor "SSA regulations…require issue exhaustion." Id. at 108. However, the Court explained that even in the absence of a statute or regulation requiring issue-exhaustion, a court can still impose an exhaustion requirement based on the analogous provision "that appellate courts will not consider argument not raised before trial courts." Id. at 108-109. Thus, the Court reasoned that a decision to impose an issue exhaustion

requirement when one is not required by statute or regulation "depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." Id. at 109. If "an administrative proceeding is not adversarial ... the reasons for a court to require issue exhaustion are much weaker." Id. at 110.

In analyzing SSA proceedings, the Supreme Court found the administrative process was non-adversarial, reasoning that in the Social Security context, the ALJ must investigate the facts and develop the record, considering "arguments both for and against granting benefits." Id. at 111-112 (citation omitted); Richardson v. Perales, 402 U.S. 389, 410 (1971) ("[The ALJ] acts as an examiner charge with developing the facts."); see also 20 C.F.R. §404.944. Due to the "inquisitorial rather than adversarial" nature of the Social Security administrative process, the Court in Sims held that a claimant is not required to exhaust a claim before the Appeals Council. Id. The Supreme Court limited its holding to Appeals Council review and declined to address "[w]hether a claimant must exhaust issues before the ALJ." Id. at 107.

Relying on Sims and Ginsburg v. Richardson, 436 F.2d 1146 (3d Cir. 1971), the Commissioner asserts that plaintiff was required to raise his Appointments Clause challenge before the ALJ for plaintiff's claim to be timely. Def. Resp. at 18-19. In Ginsberg, a case that predates Sims, the Third Circuit held that plaintiff's failure to raise objection to certain conduct and procedures during the hearing or before the Appeals Council "constitutes a waiver of her right to object" to the fairness of hearing. Ginsberg, 436 F.2d at 1152. Although Ginsburg was partially abrogated by Sims, which held that a plaintiff is not required to raise an objection before the Appeals Council, 530 U.S. at 112, the Commissioner argues that Sims did not disturb the portion of Ginsburg requiring a plaintiff to present issues to the ALJ. We do not find the

Commissioner's argument that Ginsburg requires plaintiffs to present Appointments Clause challenges to the ALJ persuasive.

In Ginsburg, the plaintiff alleged that the ALJ was prejudiced against her. The Third Circuit Court of Appeals found that the plaintiff waived that claim by failing to raise it before the ALJ. 436 F.2d 1152. The Court of Appeals explained that the plaintiff should have requested the examiner withdraw, as provided by Social Security regulations, and her failure to do so constituted a waiver of the objection. Judge Rice in Kellett v. Berryhill and Chief Judge Conner in Bizzare both rejected the Commissioner's argument that Ginsburg requires plaintiffs to present Appointments Clause challenges to the ALJ. No. 18-4757, ECF Doc. 14, 2019 WL 2339968 at *5; 364 F.Supp.3d at ---, 2019 WL 1014194 at 3. Judge Rice found Ginsburg, "concerned the basic application of the Social Security Act and regulations, not a structural constitutional challenge to the SSA adjudicatory system at large." No. 18-4757, ECF Doc. 14, 2019 WL 2339968 at *5. Chief Judge Conner explained that the imposition of an exhaustion requirement before the ALJ is "quite logical for matters within the expertise of the agency and its ALJs" such as "claims of prejudice on the part of the ALJ and a failure to record portions of the testimony." 364 F.Supp.3d at ---, 2019 WL 1014194 at *3. We are in agreement with Judge Rice and Chief Judge Connor's analysis that Ginsburg addresses issue exhaustion for claims within the ALJ's expertise and does not require issue exhaustion for a constitutional issue that the ALJ is unable to decide.

The Commissioner also argues SSA regulations require a claimant to raise all issues-including constitutional issues- to the agency at the earliest possible juncture. We are persuaded by and adopt the reasoning of Judge Rice in Kellett. No. 18-4757, ECF Doc. 14, 2019 WL 2339968 at *5. Judge Rice explained that there are no SSA statutes or regulations that order

11

an issue is forfeited on judicial review if not raised at the administrative level. Id., citing Sims, 530 U.S. at 108; 20 C.F.R. § 404.933(a)(2), 404.939, 404.940, 404.946(b), 416.1439, 416.1440. "There is nothing in the SSA's regulations that explicitly require[s] a claimant to raise constitutional issues before an ALJ"; moreover, "the language the SSA uses in its regulations is similar to language courts have found to be inconsistent with the existence of an issue exhaustion requirement." Id., quoting Bradshaw v. Berryhill, No. 18-0100, ECF Doc. 5, 2019 WL 1510953, at *7 (E.D.N.C. Mar. 26, 2019).

The Supreme Court's decision in Lucia adds additional support for this conclusion. The plaintiff in Lucia did not raise his Appointments Clause Challenge to the ALJ, yet the Supreme Court still found that he had exhausted the challenge. Although the Supreme Court in Lucia chose not to explicitly rule on the issue of whether an Appointments Clause challenge must be raised before the ALJ, the Court found the plaintiff did not forfeit his claim for failing to raise it at the ALJ level. Applying the Court's decision that Lucia did not forfeit his claim by failing to raise it at the ALJ level, coupled with the Court's holding in Sims, that a claimant is not required to raise a claim at the Appeals Council level to exhaust the claim, we find that the case law does not support a requirement of issue exhaustion at the administrative level for Appointments Clause challenges.

In sum, the above discussed case law, statutes and regulations do not impose an issue-exhaustion requirement of Appointment Clause challenges in the Social Security administrative proceeding context.

Additionally, this issue goes to the validity of the underlying SSA proceeding and could be considered even if not properly preserved. Freytag v. Comm'r, 501 U.S. 868, 879 (1991). In Freytag, the Supreme Court considered an Appointments Clause challenge to the

12

appointment of a special trial judge to the U.S. Tax court. Petitioners, a group of taxpayers, failed to raise their Appointments Clause challenge before each appealed to the Fifth Circuit. See id. at 878-79. The Commissioner of Internal Revenue argued petitioners waived their Appointments Clause challenge by failing to "timely" object to the assignment of a special trial judge and by consenting to the assignment. Id. at 878. The Court held that it has discretion to consider certain "nonjurisdictional structural constitutional objections . . . on appeal whether or not they were ruled upon below." Id. (citing Glidden Co. v. Zdanok, 370 U.S. 530, 536 (1962)). The Court recognized "as a general matter, a litigant must raise all issues and objections at trial," but explained that in "rare cases" it would excuse a litigant's "timely" failure to raise an Appointments Clause challenge where the constitutional challenge "is neither frivolous nor disingenuous" because such a defect "goes to the validity" of the underlying proceedings. See id. at 879.

As explained by Judge Kearney, relying on Chief Judge Conner's reasoning, the present Appointment Clause argument "features many of the same hallmarks underlying Freytag's ration decidendi." Calclasure, 375 F. Supp. 3d at 573 (quoting Bizarre, 364 F. Supp. 3d ---, 2019 WL 1014194 at *4). In the present case, the constitutional challenge is "neither frivolous nor disingenuous" as evidenced by the President of the United States issuing an Executive Order following the Lucia decision and by the Solicitor General issuing a post-Lucia guidance, conceding all ALJs "are inferior officers and must be appointed as such." Id. (citing Bizarre, at 5). Moreover, the ALJ's decision "impacts the validity of the underlying proceeding" because the "final agency decision in this case was issued by an administrative officer whose appointment did not comply with constitutional requirements." Id. (quoting Bizarre at 5).

13

The Commissioner argues Freytag did not "categorically" excuse all Appointment Clause challenges from forfeiture and explains that the Supreme Court stressed that Freytag was a "rare case." In addressing the Commissioner's argument, Chief Judge Conner accurately highlighted three points to support finding a "rare case" under Freytag: (1) the Commissioner identified no authority, and the court could not find any, "suggesting that the agency's ALJs could resolve constitutional challenges to their own appointment," pointing to the agency's Emergency Message instructing its ALJs to document, but not address, an Appointments Clause challenge; (2) under Sims, although claimants may raise constitutional challenges before the Appeals Council, they are not required to do so; and (3) unlike other agencies, "the Social Security Administration has no statutory analogue warning its claimants that failure to raise a constitutional question before the agency may risk forfeiture of the issue." Id. (quoting Bizarre at 6).

Similar concerns are implicated in the instant matter and we find this is a "rare case."

### C. Any Challenge to the ALJ's Appointment During the Administrative Process Would Have Been Futile

Finally, we also find that any attempt to challenge the constitutionality of the ALJ's appointment would have been futile because the ALJ did not have the authority to rule on the claim. See Matthews v. Eldridge, 424 U.S. 319, 329-30 (1976) ("It is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context. The Secretary would not be required even to consider such a challenge."). We join in the reasoning of Chief Judge Conner, Judge Kearney, Judge Lloret, and Judge Rice, who have each aptly explained that even if there were an exhaustion requirement and even if plaintiff forfeited

14

his Appointments Clause challenge, any such failure should be excused because a challenge to the ALJ's appointment at the agency level would have been futile.

Judge Rice and Judge Lloret explained that when there was no administrative process in place to adjudicate the issue, there is nothing to exhaust. Perez, No. 18-1907, ECF Doc. 15 at 14. Chief Judge Connor further explained that "[r]equiring ALJ issue exhaustion is quite logical for matters within the expertise of the agency and its ALJs . . . [c]onversely, it makes little sense for constitutional questions which ALJs are powerless to decide." Bizarre, 364 F. Supp. 3d at 422. The Supreme Court has directed that "a litigant need not apply to an agency that has no power to decree. . . relief, or need not exhaust where doing so would otherwise be futile." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) (internal citations omitted). The Third Circuit found exhaustion to be futile where "the administrative process cannot provide [a petitioner] with any form of the relief he seeks." Nyhuis v. Reno, 204 F.3d 65, 66 (3d Cir. 2000).

At the time of plaintiff's hearing none of the SSA ALJ's were constitutionally appointed. Therefore, had plaintiff raised this Appointment Clause challenge before the ALJ, the ALJ would not have had the authority or ability to provide relief (i.e., refer plaintiff to a constitutionally appointed ALJ to hear his claim). Perez, No. 18-1907, ECF Doc. 15 at 14. Furthermore, the Administrative Appeals Judges, also having defective appointments, were no better equipped to resolve this Appointment's Clause challenge because they were unable to refer plaintiff's case to a constitutionally appointed ALJ because there were none. See Perez, at *15; see also Soc. Sec. Admin., EM-18003 REV 2, effective August 6, 2018; SSR 19-1p, effective March 15, 2019. As Judge Lloret notes, the most the Appeals Council might have been able to do was take some action to alert the Commissioner of the existence of the objection.

Perez, No. 18-1907, ECF Doc. 15 at 15-16. We agree with Judge Lloret that the likelihood the Commissioner would have properly appointed an ALJ to rehear plaintiff's case prior to the Supreme Court decision in Lucia, is undeniably small.

Moreover, once the SSA was alerted to the problem, the SSA did not immediately correct the error in the ALJ's appointment, nor was SSA able to assign plaintiffs to different constitutionally appointed ALJs. Instead, the SSA issued an Emergency Message on January 30, 2018 instructing ALJs to state that they "do not have the authority to rule on [an Appointments Clause challenge]." Soc. Sec. Admin., EM-18003 REV, effective Jan. 30, 2018 and revised June 25, 2018. Therefore, had plaintiff raised the Appointment Clause challenge before the ALJ or Appeals Council and had either notified the SSA, the SSA still would not have provided plaintiff with any form of the relief. The SSA's Emergency Message "acknowledge[s] the futility of raising a Lucia claim at the ALJ level." Calclasure, 375 F. Supp. 3d at 573 (internal citation omitted). Therefore, because the ALJ had no power to provide the relief required by Lucia, a remand for a hearing before a constitutionally appointed ALJ, plaintiff raised this Appointment Clause challenge at the earliest possible opportunity after Lucia. Id. at 573-74; Perez, No. 18-1907, ECF Doc. 15 at 12-15; Kellett, No. 18-4757, ECF Doc. 14 at 2.

The Commissioner does not explain why plaintiff's Appointments Clause challenge would not have been futile if made before the ALJ prior to the Lucia decision and SSA and Solicitor General responded to Lucia. We agree with Judge Kearney and Chief Judge Conner's decisions. The Commissioner did not properly appoint the ALJ to resolve plaintiff's claim for disability benefits. This ALJ could not have ruled on this constitutional issue; SSA does not address exhaustion or futility in its regulations; and, the Supreme Court decided a similar issue involving the SEC long after the ALJ's denial of plaintiff's benefits. Finding the

16

substantially similar facts as reviewed in Judge Kearney, Chief Judge Conner, Judge Rice and Judge Lloret's decisions, we conclude plaintiff's Appointments Clause challenge, even if forfeited, should be excused as futile.

## **CONCLUSION**

Based upon the above, plaintiff's request for review is GRANTED. We find that plaintiff did not forfeit his Appointments Clause objection. Therefore, because the ALJ was improperly appointed, the Commissioner's final decision is reversed and this matter is remanded for further proceedings before a different, constitutionally appointed, ALJ.

BY THE COURT:

/S LINDA K. CARACAPPA
LINDA K. CARACAPPA
UNITED STATES CHIEF MAGISTRATE JUDGE